Case number 14-3162, Lana Shade v. Mark and Paulette Clausius. If the parties are going to argue, please approach the bench and introduce yourselves, please. Good morning, Your Honor. My name is Robert Chapman. I represent the Plaintiff Appellant, Lana Shade. With me in court today is my colleague, Melody Gall. Good morning. Sherry Friedman on behalf of the Defendant Appellees Mark and Paulette Clausius. Does the Appellant want some time for rebuttal? Yes, I would, Your Honor. Your Honor, what I thought is I would take five minutes for rebuttal, and if I could have 15 minutes or less for my introductory remarks. Well, you've got 15 minutes total. I'll take about 10 minutes on my beginning. Okay. Let's proceed. May it please the Court. Again, my name is Robert Chapman on behalf of Lana Shade. Your Honor, this case has important implications for this Court because if summary judgment is upheld, under the circumstances present in this case, Illinois will in effect become a minority of one because it will have endorsed a rule of law that any time a guest on a boat slips and falls on water that has accumulated on the boat's deck that the It's not the deck, counsel. It's not the deck. It's the swim platform. But it would be the equivalent, Your Honor, because that was the gist of the ruling, that any time there's water accumulated, water can accumulate on a boat if you slip and fall on a boat. If you slip and fall on water, that's an open and obvious danger as a matter of law. And so, in effect, immunizing boat owners from exercising the reasonable care that they're obligated to provide for the safety of their guests on the boat. As we know, this case is governed by maritime law, which for most purposes is the same as Illinois law, but it is governed by maritime law. And we respectfully submit that by upholding the summary judgment, we would not only deprive Ms. Shady, who suffered a serious and permanent injury from this fall. The issue here is, is this open enough? Well, and I'll address that, Your Honor, and I'll tell you why. That's the only issue. Right, and that's what I want to, let's get right to that point, because I think that's where maritime law, as we've said it in our brief, imposes two obligations. When you talk about maritime law, are you talking about the Jones Act, or are you just saying maritime law? Federal Common Maritime Law, not a statutory act, but the Federal Common Maritime Law. You didn't file anything under the Jones Act, right? Correct, Your Honor. It's just the Federal Common Maritime Law that governs any incidents that occur on a body of water, like Lake Michigan. And I think Your Honor has raised a good point. My question is this. Do you have to see the water for it to be open and obvious, or is it presumed that when you're on a boat, there's water? Your Honor, I think under the circumstances, you have to see it. I think it would be an error to presume on a 52-foot yacht that water is going to be on the boat. Your Honor, you have a case that says that you have to see the open and obvious deep end. Your Honor, I have cases that say it is a question of fact if you cannot see it. If you cannot visibly see the condition, the dangerous condition, if the condition is obstructed, both cases decided under Federal Maritime Law and Illinois cases have held that that is a question of fact for the jury to decide. What case says that? Okay, Your Honor. One second, please. Your Honor, in our brief we cited to No, I just want to know what case says what you just said. I understand. I'll get to it right now. Your Honor, in our brief we cited the Hamilton case, which is a Federal Court case. Yeah, does the Hamilton case say that, that you have to see it? Yeah, well, it says that where there is a dispute about the condition's factual nature, such as visibility, the question of whether a condition is open and obvious is factual. And that's what we're here for today. What did you allege that caused your client to fall? That she slipped and fell on water that had accumulated water? Did she see the water? No, Your Honor. How do you know that she fell on water? Your Honor, because we have Are you assuming that she fell on water? I'm relying on the circumstantial evidence of the activities that were occurring before she went down to the platform. So the answer is yes, you're assuming that she fell on water. Is that right? I'm assuming based on the facts, I'm concluding that she fell on water based on the circumstantial evidence. Because it was a swim platform, and because she was in a lake, and there was water all around, and she was wet when she got up, right? Well, the activities that were going on, which were people were sitting going on and off the platform during the day, and also the tender, the yacht tender, was going back and forth into the boat creating a wake from which water... So the answer is yes, you're assuming that she fell on water, right? And you assume that because she was in the middle of a lake, right? Among other things... And can't you also therefore assume that there's going to be water there? And can't any reasonable person assume that there's going to be water there? On the platform? Yes, on a swim platform that is just barely above the water. Well, I don't know what... It's just barely above it, your honor, I don't think that's... Can I... Well, answer my question. Okay. I don't think you can assume that she fell on water. But I assume that she fell on water because of the activities that occurred. I didn't ask you because, I'm just asking you, are you assuming that she fell on water? Yes. Yes. And can't you reasonably assume that there's going to be water on a swim platform on a boat that's in the middle of a lake? Not if it's just... You think it's going to be dry? If it's just... If the boat has been anchored there? I don't know, your honor. It wasn't anchored. It was in the middle of the lake. But it was anchored in the middle of the lake. Right. So it's sitting in the middle of the lake or in an inlet. Right. And you're saying that it's not reasonable to assume that there's going to be water on a swim platform? Your honor, if you've never been on a swim platform... Well, I have. And I accept that you have. And I accept a lot of people have, but a lot of people haven't. I haven't. And Ms. Shady hadn't. And so you think it's reasonable for Ms. Shady to assume, to not know that there would be water on a swim platform when she's sitting on a boat in the middle of a lake. Is that what you're telling me? I'm telling you, if you had not seen it, I think you're making a... I don't think it's a fair assumption. I think you're making the same assumption that you're making as to what caused her to fall. That's a lie. The difference between what I'm doing and what you're doing is you're saying boating water, water on platform. I'm saying boating water activities on the platform that the plaintiff did not observe, that she did not observe going on until she had no prior opportunity. Yeah, I just wanted to ask a question because maybe I'm misreading these facts. But I thought she went down the stairs to wait her turn to get on the tender because she knew people were getting on the tender on the platform. There, ergo, the platform goes down below the water. The tender comes up on the boat. Water's on the tender. No, that's not how it goes, Your Honor. You're mistaken. The platform is mechanically raised up and down. Right. She didn't see, she didn't observe that. And so it goes down and then it comes up and then it's above the water. I had not seen it and she did not see it. Okay. So I understand. No, you get off if you get on the tender. You have to fall onto it. Right, and then it goes in the water. No, no, that's not how it happens. The tender's already in the water. They lower it in the water. Then people stand on the platform. They have to climb into the boat off the platform. It's no different than a deck. The boat doesn't go back on and off the platform each time. You mean the tender? Yeah, the tender doesn't go up. It's in the water. It's permanently in the water. It doesn't climb back on. The owner doesn't bring it back onto the platform. A new group of people get on and then it's submerged again. They have to climb off the platform into the tender. Your Honor, you raised the issue. Before you do that, the defendant testified in this case that the platform had a surface that was skid-proof. Yes. You recall that? Yes. And that it had cutouts which caused any excess water to drain from the platform and no one had slipped on any of his boats for the 40 years of boating that he was involved in. Okay. Correct. So I guess a reasonable person or reasonable people could draw divergent inferences from the undisputed facts in this case. Yeah, that's right. That's our whole point, which is it's not an appropriate case for summary judgment. And, Your Honor, your points, I agree, would be good argument. But to rule as a matter of law what you're saying I don't think is appropriate. Well, the question of open and obvious is a matter of law, isn't it? It is, and that's why I want to, if I could, I want to take one step back and answer. Yes, it is unless, as I just read to you, the physical characteristics of the condition are in dispute and if the visibility of the condition is in dispute, as I just read from the Hamilton decision, then it is considered to be a question of fact for the jury. And, Your Honor, you raised the first most important point at the beginning. Isn't this just about open and obvious? And that's not what maritime law says. Maritime law imposes, and we cited in the Lancaster case, and I'd point the court to that 2015 federal court case under maritime law where the court presents the framework in a two-part framework. First is did you, did the plaintiff, excuse me, did the owner create a dangerous condition is one obligation. You cannot create a dangerous condition. Two, did you fail to warn of a dangerous condition? They're two separate obligations. And in the Lancaster case, the court made very clear that under maritime law, open and obvious is not a defense to the creation of a dangerous condition, that it is only a defense to the failure to warn. In the Lancaster case, in fact, the court found on summary judgment for the defendant, boat owner, the cruise line, on the failure to warn, but did not reverse on summary judgment on whether or not the defendant had created a dangerous condition. So, Your Honor, that answers your question. Right off the bat, were you asking? But here's the problem. Let's take open and obvious and put it aside for a moment. Okay. Your client testified on the position that, you know, she doesn't know what she fell on. She testified, Your Honor, that she did not see what she fell on when she got up, her arms went up. She couldn't tell us why she fell. She slipped and fell. She could have slipped on her own foot. She could have slipped. I don't. It's a question of causation there. How do you cover causation that that slip that she had is a result of something that the defendant did wrong? Well, Your Honor, you'd have to look at it in terms of what is proximate cause. Proximate cause is ordinarily considered a genuine issue, a question of fact for the jury to decide unless the only inferences are that it could not have been caused by the defendant's activities. Here, Your Honor, what else could she have slipped on? There is no logical inference, I would suggest to you, that from what she could have slipped on, given the activities that were going on, she did not trip on anyone's feet. She did not testify that she slipped. She tripped over anyone in the crowd. She was moving forward. She slipped and fell on the ridged platform. And the only logic, and when she got up, she was wet over different parts of her body. Under that situation, Your Honor, I would submit that the only logical inference is that she slipped and fell on water. There is no other logical or reasonable inference. At a minimum, we should not decide. You didn't get kicked out on causation, did you? No. No, that never even came up in the argument. What did the judge say about the creation of the dangerous condition? He didn't say anything, Your Honor. Judge Lawrence respectfully said, from his view, it was open and obvious as a matter of law. And what I'm submitting to the Court now is that's not the proper analysis. It's a two-part analysis. Open and obvious only goes to failure to warn. Judge Lawrence never examined whether or not the defendant had created a dangerous condition that could have been avoided. We submitted an abundance of evidence on that issue, both from Ms. Shady, from the defendant's own admissions, from our own expert testimony, from Mr. Allen, that this was an obvious dangerous condition. When you put a large group of people on a platform of a boat where you're creating a situation where you're bringing a wake, there's nothing to hold on to as you walk down onto the boat. You're already way past your time, so kind of sum up here. Okay, Your Honor. Thank you. Can I just add one question? Sure. Yeah. You're saying the water's not visible or possibly not visible. How about the crowd? Isn't the crowd visible? Of course, Your Honor. Would somebody like to join the crowd? Of course the crowd's visible. Wait, wait. And if the crowd is visible, doesn't Lancaster say that if there's a crowd that's visible, then you ought to know that it could be obscuring something, and so it's open and obvious, and there's no duty to warn? I'm recognizing they denied reverse summary judgment on the creation of a dangerous condition. On that, Your Honor, the key difference is they showed the facts that the plaintiff in that case, as he was moving about the deck of the boat, could see people with their suitcases, could see the crowd, could see all of those things. There's no evidence here that the plaintiff saw the water on the boat, clear water on a plexiglass. You just skipped over something. Okay. It's not a question of whether that person could see the luggage. It's a question of whether that person could see the crowd. No, Your Honor. I respectfully submit to you it's that he could see the luggage. He knew both things, that there was a crowd and that the crowd was getting off the boat with their luggage. Well, to follow up on Justice Plankton's question, couldn't your client see these people on the swim platform? Of course she could. But you then have to go to the next part is, should she have known she didn't see the water, she hadn't been out there before, should she know as a matter of law that there's water on this ridge platform that has certain parts that are supposed to allow the water to exit off the platform, that she should know that every person, every reasonable person, Your Honor, and that's to uphold summary judgment on a failure to warn here, you'd have to find that every reasonable person, regardless of their boating experience, when they get on a platform that's crowded. There's water on the boat. That everybody should know that in a crowd there's water on the boat no matter where you are on the boat. On the platform that allows you to get in and out of the water. I'm not talking about the deck upstairs and everybody's partying and getting drunk upstairs. I'm talking about down on the level where it's almost at the water and you can dangle your feet off in the water and all that kind of. And you can go from boat to boat. That's not from the platform, Your Honor. You go over the decks of the boat to go from boat to boat. And that's what, there's so many assumptions built into what you just said that I don't think unless you had experience and watched people on there, people dangling their feet off, she was in, this is like an apartment, this boat. It's a 52-foot yacht. You can be on one part of the boat and never see what's going on. And that's what she testified to. So seeing people swimming off, seeing the tender putting water on the boat, she never saw any of those things. And that's why, how hard is it on the, how much of a burden is it on to the defendant to say, just let people know, be careful, hold on to something. That's not asking a lot of a boat owner. Thank you, Your Honor. If not, she had any other questions. I appreciate the extra time. Thank you. May it please the Court? Just a few points. This plaintiff is an adult. She had been on boats before. She specifically testified in her deposition that she was aware that water gets into boats. Water gets on decks of boats. And when water gets on decks of boats, decks become slippery. She testified that she has walked on decks with water on them before. This isn't just any deck. This is a swim platform. The platform is basically even with the lake. Boating activities have been ongoing for some time. The plaintiff herself had gone from one boat to another boat to another boat to view the different boats and engaging in different activities. She could see that people were on this tender out in the water that was going out into the lake and coming back right to the tender. Her expert testified that was probably awake from the tender that brought water onto the platform. Those are things she could see. She wanted to take a ride on the tender. She knew what was going on. So she knew that there were boating activities. When she stepped onto that platform, she stepped down. So she's going closer to the water. It's just clear that there's a reasonable expectation that there would be water on this swim platform. It's a two-part analysis. The first part of the analysis is, was there a dangerous condition created by the defendant? Was there a dangerous condition created by the defendant? No. What would that dangerous condition have been? The counsel says it's a group of people standing on the swim platform obstructing her view of the water. Okay. But there's no evidence to that effect. There's no evidence as to how many people were on that swim platform. She couldn't say. Yet, the plaintiff had enough room to descend down onto the platform, to move about the platform. She said she fell on her side. So she was able to fall on her side and not push anybody into the water. She didn't fall onto anybody. Nobody ended up in the water when she fell. So how crowded of a situation, you know, how crowded of a platform could this have been? And also, the plaintiff. Is that a question of fact? It's not a question of fact. Because the plaintiff could see if she felt that platform was too crowded. You know, she has to use her senses. You can't just say she wanted to engage in this activity, so by God, she's going to go down there regardless of what the circumstances are. She had the choice to go or not to go. You know, this is similar to... Does she have to see the water? She does not have to see the water. She has to perceive the water. She does. So Hamilton, the Hamilton case cited by counsel, it's not a boat case. Okay. Invited guest, a customer of Target was walking through the store, turned a corner, slipped on some water. Okay. So the court said, for a condition to be open and obvious, an invitee must reasonably be expected to discover it and protect himself against it. In Target, you're there shopping. You don't expect water to be on the floor when you turn a corner. On a boat, on a swim platform, you expect there to be water on the decks and particularly on the swim platform itself, which is so close to the water. So was there a dangerous condition? No. We don't believe there was a dangerous condition. This plaintiff had options, which is unlike, for example, the Samueloff case that we cite in our brief where it was a cruise ship situation where the guest was on a tender that was arranged for by the cruise ship and there was no room on the bottom so he had no choice but to go up on the top and it was raining and he slipped and fell. And there the court said, well, you could expect that people would have to go up there in order to take this tender right to get to shore for their excursion. Okay. So you should have taken some precautions. Now, the case of Fosca v. NCL, it's a Southern District of Florida case, 2014, specifically distinguished Samueloff. It was also a cruise ship situation, but it had been raining outside and a passenger who knew it had been raining outside decided to go onto the deck. Okay. And the court said, uh-uh, you know, summary judgment for the cruise ship because you had a choice. You made that choice. You're a reasonable person. You could see what was going on and you made that choice and you got injured and that's on you. Now, in this situation, this plaintiff, who has experience walking on decks of boats with water on them, chose to go onto the platform at that moment. We don't know what she fell on. There's no evidence that she fell on water. She says she fell on water. She could have just tripped. I mean, there is no evidence that she fell on water, but she should have had that reasonable expectation that there would have been water on the deck. There is no evidence that she fell on water on this particular deck area, this swim platform, based on all the circumstances and what she could see using her own senses. Well, the way you're presenting it, reasonable people could draw divergent inferences from the facts. No, not in this situation. Why is that? Because you're on a, you're descending onto a swim platform. Who wouldn't think that there would be water on a swim platform? Well, here, Uri, the defendant said that this was skid-proof and he had cutouts where excess water would drain off. That's correct. It seems that he did every type of precaution that he could to make sure that people would not slip. Well, that's correct. It was a skid-proof surface and there are holes to have the water drain so there isn't a buildup of pressure underneath the deck. But that doesn't mean that there isn't going to be water on the deck, particularly when you've got people coming in and out of the water. There's no testimony that anybody saw any water. I'm sorry? There's no testimony anybody saw any water. She said she was wet when she got up, but that's about all you have. Well, that's true. And if there was no water, then she certainly didn't fall on water and there was nothing to warn him. And that's a question of fact, isn't it? It's not. Because either if she slipped on the water, it's something she reasonably should have expected. And then that, so that is open and obvious. If she did slip on water, then there's no issue whatsoever. So either way. So, Council didn't mention the distraction exception, but I'm going to ask you about it. How does that come into play or not come into play? There is no, what is the distraction here? There is no distraction. Are you asking me? No, I'm just, a rhetorical question. A rhetorical question. There's no distraction here. If Council is arguing that it's the crowd that's a distraction, she could see the crowd, if there was in fact even a crowd. She could see the people on the platform. Well, but the people aren't the danger. The people are the distraction, if that's his argument. Exactly. They can't be both. The people would be the distraction, which distracts you from the water. So, first step one is, how does the distraction exception apply under maritime law? Does it? It doesn't. It doesn't in this situation. Well, first, just generally as to the common law. Does it exist under the common law? It's an Illinois, it's under Illinois law, the distraction exception. I haven't seen any cases under maritime law. Okay. All right. And so, assuming that it exists under maritime law, what would your response to that be, with regard to the distraction? It doesn't apply here, because there was no distraction. I mean, how can the people be a distraction? You're talking about an adult, a reasonable person. She has to use her senses. Okay. A condition is only dangerous if it's one where the passenger would have no idea might exist. And she clearly knew that there could be water on decks of boats. So, in this situation, if there's other people on the deck, that shouldn't be a distraction for her. Well, a distraction is something that distracts a person from the condition. She never saw the water to begin with.  Well, but simply because she didn't see it doesn't mean that she was distracted. Isn't there something in the, correct me, isn't there something in the distraction exception that says that it has to be something that causes you to forget about the existence of the danger? And how is she going to forget about the existence of the danger of there being water on a swimming platform in the middle of a lake? Exactly. Exactly. That's my point, Your Honor. How can, even though she says there was a crowd of people, and again, we don't know how many people there were, how can she forget that she's in a lake? This swim platform, it's not a huge deck. You know, it's a relatively small area compared to the entire boat. And in fact, she was going onto the swim platform to get onto a tender that's in the lake. So again, how can she forget that she's on a boat in the middle of a lake? So it's our position that that doesn't apply in this case. And that this condition was open and obvious. As a reasonable person, there was a reasonable expectation that she would know that there could be water on this swim platform. Thank you. Thank you. Thank you for both. Thank you. I think what we just heard counsel give was closer to what we said. It's closer to a closing argument you'd give to a jury, not in Illinois, where summary judgment is considered a drastic remedy, must be clear and free from doubt. Let's look at what the owner did with this boat. He did create a dangerous condition. There's no doubt. We have unrebutted expert testimony from someone who's been recognized by other federal courts as a maritime expert who went through in detail how this dangerous condition was created, why the defendants did not exercise ordinary care for the safety of their guests. And we're going to say that's summary judgment. We were going to pretend that none of that evidence appears in the case and we're going to give a closing argument about her senses and what reasonable people do from the defendant's perspective. Your Honor, the argument we just heard was that mishmashing that occurs in the defendant's brief of the two separate prongs that must be addressed. Is there a dangerous condition? Well, she has to exercise her senses. Exercising her senses has to deal with open and obvious. It doesn't have to deal with a dangerous condition. The point that she, again, this free will point, Your Honors, as we say in our brief, maritime law does not allow for the assumption of risk defense. And we're getting pretty close, in my opinion, and I submit to you, we're getting close to an assumption of risk. You go on a boat, you assume the risk that you're going to slip and fall on water on the boat. And maritime law specifically says assumption of risk is not a defense. And we're getting much closer to that. So what you would like to be done is that we should write that any time you allow a guest on a boat, there should be a sign that says watch out for water. No, Your Honor. I think any time you tell people, you invite them to go down and congregate, in an area that could be slippery, if it is wet, it could become extremely slippery, that you either include, as our expert says, you have to either include handrails to support them or you have to designate someone to assist them as they come up and down onto the platform to help stabilize them so they don't slip and to let them know. I'm not saying that would be a warning, Your Honor. Yes, you could give instructions. But in the Lancaster case, that's what they talked about, that you needed extra personnel to oversee and supervise the crowd. It's not normal, Your Honors, to have a large group of people. Remember what Ms. Shady testified to. She had to squiggle through the group of people on the deck that was that crowded. She had to squiggle through them. And so, yes, Your Honor, I'm saying that if, as in any case, where the standard of care requires you to protect for the safety of your passengers and you engage in what the expert testified was to an improper activity on the platform, which is allowing them, a large group of people, to congregate on the platform, not so that they can go swimming, but so they can go on the tender, yes, I'm saying that juries should decide that is in any case where the standard of care is at issue. And, Your Honor, I'd just briefly like to address the issue of, well, she had a choice. She was invited to go on this boat ride. A dangerous condition was created. Just as it was created in the Samuroff case. They said, do you want to go into town on your cruise ride? Then get on this tender. And the tender was of a slippery nature and someone slipped and fell on it. And that's no different than the deliberate encounter exception, Your Honor, to the open and obvious doctrine. If I invite people to go do something and the condition is present, even if it is open and obvious, if it is reasonably foreseeable that the guest will have to encounter that condition, then it is a question of fact of whether the open and obvious doctrine applies. That's what Samuroff says. They reversed the directed verdict there because the plaintiff, the defendant there said, you want to go on shore? Here's what you have to do. It was reasonably foreseeable. They would encounter the dangerous condition. The same way here. You want to go for a ride on the tender? Then go down to the platform. But that's assuming that there's a dangerous condition. It would be no different dangerous condition than it was on a dangerous condition, Your Honors. If I go and walk, it's slippery when wet. That's a dangerous condition. That's what they ruled in Samuroff. But even in your brief, you say that a dangerous condition is one that is not apparent and obvious. As a leading into then the analysis that occurs, Your Honor, and all of the cases have held, and that's what Samuroff said. A dangerous condition is, it's no different than they're going on the wet boat, or the case Ms. Friedman cited, which went to open and obvious, not to whether a dangerous condition was created. Yes, I understand if I come on a boat and I go out. I'm just on a boat and I walk on the deck. I understand that the failure to warn claim might be more difficult in that situation. But what they said was, when you require me to accept your invitation to go somewhere, then the deliberate encountered exception will overcome or at least create a question of fact on that point. And, Your Honors, I just, in this case, there's a tendency, as I said at the beginning, there's this tendency to say you're on a boat, you slipped and fell on water, you're out of luck, tough luck. And it's an uncomfortable position to put courts in to say, to hold the defendant liable here. But there are numerous courts that have held the defendant liable. We're on a, you're on someone's boat. That boat owner is expected to act with due care for the safety of their passengers. We read all about what's going on now in the playpen over by Navy Pier. And we have to say you must exercise due care. You can't tell me go down and ride on my tender without providing proper safety for me. Otherwise, you're just encouraging reckless behavior, which will occur, which did occur here. And so I would submit to the court that at least saying there's a question of fact here that should be decided by a jury and not as a matter of law, given the evidence. Did your client testify that the area was slippery? She testified that she slipped and fell when she took a step on it. I know, but she didn't testify it was slippery. She walked down, she took one step and fell. No, I understand that. She didn't testify to the words, it's slippery. I understand that. But in order for there to be negligence on somebody, they have to do something that a reasonable and prudent person would not do. And if they have no notice and knowledge of a condition, then how could there be any negligence? Unless they created the condition. And that's clear. No, she didn't say that she slipped on something slippery. Well, if that's the case, you have to use the circumstantial evidence. What else would be, I respectfully submit to the court, what else is the reasonable inference here? There is no other reason. It's not negligence per se. Negligence per se. If you slip and fall on water on a boat, you're therefore liable. No, I'm not saying there is, but when there's testimony from the, unrebutted testimony from the expert witness, that proper care on a boat would include A, B, and C, and they did none of those things, then I would say that's negligence. Otherwise, what was the purpose of the expert testimony? Why do we have expert testimony in car crashes? Well, sometimes the trial court shouldn't allow expert testimony if it's not going to enlighten. Well, here I think it would because I'm not a boat owner. The regular person is not a boat owner. They don't know what is proper care and safety on a boat. That's why people like Mr. Allen have been recognized by other federal courts as a proper expert on these type of matters. I asked the counsel about the distraction. Do you want to add anything to her comments? Sure. I just think that, first of all, as they did in their brief, they again conflated or confused what the distraction is and what the condition is, as Judge Lampkin pointed out. The distraction is the crowd. The condition is the water. Now, if I'm on a boat and I can barely squiggle and I'm dealing with the people, I'm not going to be looking down and I'm distracted from my ability to look down. That's what the distraction is. It's not visible to me. That's what the cases repeatedly have said. If the condition is not visible, we don't say to someone, we'll assume it's there. If it's not visible, the condition, which is the boat, the swim platform is not in a constant state of slipperiness or wetness. The Lake Michigan is in a, I believe, Your Honor, you cited, there's the case of the, I forget the name of it, where they dive into the water and you know the condition is there. You weren't distracted. The people dove into the water and hit the shallow end of the water and tried to say there was a distraction. Me diving in the water, I'm not distracted from anything. Here, my ability to traverse across the platform, I am distracted because I can't see it. I can't see clear water on the platform. And I don't think it's correct that I should just assume it's there. I would look down for it if I could see it, but I'm trying to deal with the fact that as the expert opined, the platform was being used for an improper purpose, which was to have a large number of people congregate on it in order to take rides on the tender. And that was improper. It violated the standard of care for what a boat owner should do. I'll just check my notes for one second, Your Honor. Oh, thank you very much. Thank you very much, Your Honor. Okay. You guys gave us a very interesting case, and you did very well in your arguments and in your briefs, and we'll take this very interesting case and decide it. But we won't decide it right this second, okay? We're going to review it and take it under consideration.